The first case call for argument is Thomason v. Evergreen Energy. Counsel, you may proceed. Facts, I think, are pretty great for not having to speak about a year ago. I tried a case over in White County, retaliatory discharge, representing Michael Thomason, a former employee. He gave notice to a fellow by the name of Gary Evans, who was the chief force behind Evergreen Energy, the defendant, that he had sustained a hernia injury and he was expecting Evergreen to pay for it. And shortly thereafter, apparently, the dispute was terminated. A case was tried before a jury over in White County. The verdict came in for the defendant. I timely moved for a new trial, raised two issues in my request for a new trial, which was denied and docket entry by Judge Webb. The first issue that was raised was there was an improper instruction because it did not accurately reflect what we contend should be the burden of proof in this case. And then the second was the admission of testimony which was unfavorable to my client. Well, similar testimony, I would argue, basically indistinguishable testimony that I attempted to offer to my client was denied. An objection was sustained and the offer of proof was given outside of the jury. I understand I've got a pretty big burden up here because in any trial that goes four or five days like this one did, you can go through the record and you can pick things that the trial judge did and upon the, with the benefit of reflection, say, well, this was air. And although the other side did not raise harmless air or something approaching to it, I understand that's what this court is going to do. Did it really make a difference in the trial? And we argue a little bit about what is the standard of review. And we think the standard of review would be unfairly prejudiced. And at some level, we're going to have to show prejudice. And I want to talk briefly then about the testimony. There's a fellow by the name of Ed Bruce. Ed Bruce was a partial owner of the company at the time the decision was made to terminate my client. Ed Bruce was involved in the discussions with Gary Evans about my client and was a party to that one main discussion as to whether he should be terminated. Now, there is no dispute, I believe, in terms of what Ed Bruce said. He was a party to the discussion. My client's hernia injury was discussed in that discussion. And Gary Evans was not happy about the fact that my client was seeking to have his hernia surgery paid for. And all that evidence did come in. And so then, because I, of course, had taken Mr. Bruce's discovery deposition, I asked him in his deposition, well, what do you think was the primary reason, that's the language I used, as to why Thomason was terminated? And he said it was the counterclaim. And that's the way he testified in his discovery deposition. So on cross-examination, I laid the foundation. I don't think there's really, after we spent some time with that, but ultimately the trial judge would not let Mr. Bruce testify consistently in his deposition because, as the trial judge said, that is approaching the ultimate issue. In fact, that is the ultimate issue. To allow Mr. Bruce to answer that question would be invading the prerogative of the jury. And that was the primary reason why the trial judge disallowed the testimony. And in the motion for new trial, and in our brief, we indicate that that cannot be the sole reason why testimony is excluded. If a proper foundation is laid, this is a lay witness testimony. The jury is free to disregard that testimony. And there was, in the normal pattern jury instructions, the jury was basically told that. But then later on, in that very same testimony, after my testimony was excluded, in a different part of his deposition, discussions were made about some retinal equipment and whether it had been properly returned. And Mr. Bruce was asked by defense counsel, and you'll see in the transcript that we got in a big brouhaha about whether he had laid a proper foundation, and eventually the trial judge did say that he did, and there were numerous objections to the leading question. But eventually the question was permitted to be asked, what was the main thing that motivated the termination, at least in Mr. Evans's mind? And that testimony was permitted to be heard by the jury. Can I ask you, with respect to the second question by the defendant, was there ever, was the foundation laid, or was it ever clear that this was something that Bruce had heard his employer say? The precise answer to your question is no. Bruce is not quoting Evans. So your position is it was essentially the same question, and he was permitted to ask it and you weren't? That's exactly right. I don't think it's a distinction without meaning to say primary reason. Jury doesn't get to hear the main thing. Jury does get to hear that. And it's not like Bruce is the janitor and that he's just going through the office and he happens to overhear something. He's one of the owners of the company. He's part of this privy to this conversation. He's witnessing what Evans is saying, and the one comes in and the other doesn't. Now, if they both come in, then I think the jury probably could have said, well, this guy's probably not credible one way or the other because he's taking inconsistent positions. But in this case, his evidence, main thing, is heard. My evidence, primary reason, isn't. Bruce is there. I think we cannot assume that the jury hearing what Bruce had to say in this all-important conversation about my client being terminated was going to be ignored by the jury. And you say Bruce was one of the owners of the company? Yes, he was a part owner. But he was not then involved in the actual termination. Yes, he was involved in the sense that he was there for the conversation. But he didn't terminate him, so to speak. Correct. Okay. Bruce didn't make the decision to terminate. That was Evans' decision. Now, I also want to briefly talk about the burden of proof instruction and the issue instruction. Well, the affirmative defense is found in page 8 and 9 of the appendix. And you can see in their answer, they plead, Evergreen pleads, a number of affirmative defenses. Then you look at page A-12 of the appendix, and this is the actual instruction that was given to the jury. And you can see this is in my writing. This is in Judge – this is Mr. Bond's writing. This is in Judge Redway. This is the writing of the jury. They're obviously going down this issue instruction to guide them in their deliberation. And then you look at over A-13, the burden of proof instruction, they're doing the same thing. Now, it is true that the instruction that was given is found in page A-12 of the appendix, and A-13 comes right out of the IPI. And there's cases in there, as Mr. Bond and my opponent points out, that there's a burden. I mean, the trial judge is presumably going to use the IPI instruction, and that's why we have them there, and we shouldn't be chastising the trial judge for doing something different. But it's our belief and contention that when they, at page A-9 of the appendix, in their answer, they list all these things as affirmative defenses. Now, I have to assume in preparing this case that whether it's an affirmative defense or not, they seem to think that it is. They've pledged, in terms of my trial strategy, in terms of what my burden of proof is, I really have a right to know who's got what burden of proof on what issues. And, in fact, I'm not going to digress too much. And that's the way I tried the case. And then we show up at jury instruction, and Edward's counsel, Edward Green's counsel, says, I don't have to prove these things. I don't have the burden of proof on these things. Look at the IPI, and that's what the plaintiff's burden of proof is. Now, it's our contention, and we cite cases for this, if you assume the burden of proof on something, then if you assume the burden of proof pleading on something, if you're calling something an affirmative defense and you're pleading, then you may have to sustain the burden of proof as to this. And if you look at the instructions, something that after this case is over, finally over one way or the other, I am going to talk to the IPI people, because these instructions here are extraordinarily confusing. If you look at A12, it doesn't say, it says the defendant claims the plaintiff was discharged because he lists a whole bunch of things. And virtually everything that's listed in A12 is near what they are pleading as an affirmative defense. And the jury isn't really told one way or the other who's got the burden with regard to that. I think we have to assume it's the plaintiff, the way it's pled. And then A13 comes along, and we've got the burden of proving everything. And I think we were entitled, we contended, we were entitled to an instruction saying they pled it, they should have to prove it. We were entitled to a burden of proof instruction as to all of these issues that are set out in A9 and given to the jury in A12. So A12 and 13 were given together. Correct. So basically you're saying that Evergreen was allowed to basically put all these propositions in front of the jury and avoid the jury being told what their burden of proof was as to all of them. Correct, Your Honor. And read in context, I think the jury had to conclude, there's no other way to read the instructions that the burden of proof was the plaintiff's. And they pled them as an affirmative defense. They do that, they should have to assume that burden. And frankly, one of the reasons, or it's a minor reason, why I brought this appeal, certainly not the substantial motivating one, is that defense counsel does this sort of stuff all the time. They come in there and they plead all these affirmative defenses in these lawsuits and they list them and sometimes they go on three or four pages. And because they want to get them injected into the record, injected into the pleadings, injected into the instructions, but they plead them and they list them as affirmative defenses, but they don't want to assume the burden of proof on them. And I don't think they should be allowed to have it. And this is kind of a typical example. Do you believe that the burden of proof, once you've made a prima facie case, shifts to the defendant? I hope that is the law, but frankly, in the Illinois Supreme Court in cases after the Kelby case, basically the federal burden shifting and McDonnell Douglas is not embraced in Illinois. It's just that the burden is on the plaintiff. Right. So I'm wondering how you square that with your argument that the defendant should be required to produce something when, in fact, we don't have burden shifting like that. It's a simple matter, Your Honor. Most of the stuff, frankly, in A9, previously, just arbitrarily, I'm going to pick one out, 1B. That's the one that kind of sticks in my craw a little bit because there wasn't any requirement in 1B that he couldn't have secondary employment. And yet there seemed to be saying in there that they could fire him for that reason. Once they plead this stuff, they didn't have to plead this stuff, and probably most of the stuff found in A9 of the appendix is not an affirmative defense. As a matter of law, it's not. But when they plead it, then they should have to prove it. Otherwise, I thought the pleadings were kind of like a roadmap for the lawsuit. We state in our complaint what it is, the things that we have to prove. They deny. We know the burden of proof is on us. They file affirmative defenses. We file a reply. The burden of proof is on them. And that's how I proceeded in this case in terms of discovery and actually trying the case. So you do agree the burden shifts? If they ask to have the burden shift by filing an affirmative defense, yes. And it's not anything unique to retaliatory discharge law. I think that's what the law is in Illinois on any matter, whether it's a retaliatory discharge case, a negligence case, breach of contract case, whatever it might be. You plead something as an affirmative defense, and I think you should be held to that standard. You should have to prove it. Well, an affirmative defense is subject to the pleading rules. It's subject to motions. I mean, I agree that if you're going to plead it, you've got to be able to prove it. And that's why I didn't file any motions to strike their affirmative defenses. I didn't file any motions for a more definite statement or failure to state an affirmative defense. I didn't file any of those things because I just wanted to deny it, because in my opinion, as I read Illinois law, they pled it to their burden. And at what point does the burden shift back to you then? In a retaliatory discharge case, I don't think it ever does, because as you are obviously well aware, the McDonnell burden shifting ethical analysis doesn't apply. It's just a simple lawsuit. And they either approve their affirmative defense or they don't. That's what I think. On cross-exam, if they had introduced this witness, do you think you would have been able to cross-examine him as to the reason your client was fired? In fact, I did. So did you get through the back door what the judge wouldn't let you go through the front door? No. I tried. Okay. No. I asked him, well, what were you there? And then they talked about the hernia and how was Mr. Evans' demeanor, and he was angry. And he wasn't happy about it. And I got all that in front of the jury. But when it came to the ultimate question, the jury heard their answer, did hear mine. I think it's just grossly unfair. And we're not talking about some witness that was just kind of out on the periphery. This is a guy that's privy to the conversation when a decision is made to fire my client. If there aren't any other questions, and we've got a group here that are waiting patiently. Anxiously. I'll sit down. Thank you, Your Honor. Thank you, counsel. Thank you. Your opposing counsel is brave. We appreciate your argument. We appreciate the bravery of both counsel, and we will take the case under review. Thank you.